UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>SHANE SCOTT OLNEY,<br><br>                    Defendant. | NO:  13-CR-2094-TOR-19<br><br><br>ORDER RE: PRETRIAL MOTIONS |

BEFORE THE COURT are Defendant Shane Olney's Motion to Dismiss this Action, for Want of Jurisdiction, or Alternatively, to Decline Jurisdiction in Favor of Yakama Tribal Court (ECF No. 877) and Motion to Dismiss Case (ECF No. 886) .  The matters were heard at a pretrial conference on September 8, 2015, in Yakima, Washington.  Benjamin D. Seal appeared on behalf of the United States.  J.J. Sandlin appeared on behalf of Defendant.  The Court has reviewed the record and files therein, heard from counsel, and is fully informed.

///

ORDER RE: PRETRIAL MOTIONS ~ 1

# BACKGROUND

On August 13, 2013, a grand jury issued an Indictment, charging Defendant Shane Olney with the following: (1) Count 1, conducting an illegal gambling business in violation of 18 U.S.C. § 1955; (2) Count 2, conspiracy to violate the Animal Welfare Act in violation of 18 U.S.C. § 371; and (3) Counts 3, 8, 10, 13, 16, 18, 22, and 25, unlawful animal fighting venture in violation of 7 U.S.C. § 2156(a)(1).  According to the Indictment, Defendant Olney, along with other named defendants, participated in illegal cockfighting and an illegal gambling business involving betting on cockfighting.  *See* ECF No. 1.  The United States asserts that out of the thirty-six cockfighting derbies its confidential source witnessed, Defendant Olney hosted ten at his property located in Toppenish, Washington.  ECF No. 882 at 2-3.

In the instant motion, Defendant moves to dismiss this action for lack of jurisdiction.  ECF No. 877.  Defendant is an enrolled member of the Confederated Tribes and Bands of the Yakama Nation and contends the legality of his conduct—conduct committed on the Yakama Nation reservation—is a matter for the Yakama Tribal Court.  As such, Defendant contends the United States does not have jurisdiction over this case.  Alternatively, Defendant contends that even if the United States has jurisdiction, this Court should decline jurisdiction and defer to the Yakama Tribal Court.

**DISCUSSION**

"Indian tribes initially possessed exclusive jurisdiction over crimes committed by one tribal member against another in Indian country—even when the crime was murder." *United States v. Mitchell*, 502 F.3d 931, 946 (9th Cir. 2007) (ellipses omitted); *United States v. Bruce*, 394 F.3d 1215, 1218 (9th Cir. 2005) ("The historical background of federal criminal jurisdiction in Indian country can be traced to colonial times, when Indian territory was entirely the province of the tribes and the tribes were understood to possess jurisdiction over all persons and subjects present on Indian lands.").

However, the authority of Indian tribes to regulate their own affairs has eroded over time.  As quasi-sovereign entities, Indian tribes "may regulate their own affairs except where Congress has modified or abrogated that power by treaty or statute." *United States v. Begay*, 42 F.3d 486, 498 (9th Cir. 1994).  "Courts have also recognized . . . that regulation of criminal activity in Indian country is one area where competing federal interests may override tribal interests." *Id.*  Today, by virtue of statutory and decisional law, federal court jurisdiction extends to violations of major crimes committed by an Indian against another Indian, as well as intra-Indian violations of federal criminal laws of general, nationwide applicability.  *Mitchell*, 502 F.3d at 946; *see Bruce*, 394 F.3d at 1218-21

(discussing the historical evolution of the exercise of criminal jurisdiction over Indians and Indian country).

### A. Indian General Crimes Act and Indian Major Crimes Act

First, Defendant Olney asserts that neither the General Crimes Act nor the Major Crimes Act supports federal prosecution in this case.  However, as these statutes have no bearing on the authority of the federal government to prosecute federal laws of nationwide applicability that make actions criminal wherever committed, *see Begay*, 42 F.3d at 498, this Court finds these arguments are without merit.

"To balance the sovereignty interest of Indian tribes and the United States' interest in punishing offenses committed in Indian country, Congress enacted two statutes, 18 U.S.C. §§ 1152 and 1153." *Id.*  The Federal Enclave Act, 18 U.S.C. § 1152, also known as the Indian General Crimes Act, "makes federal enclave criminal law—a concrete body of law governing areas within the sole and exclusive jurisdiction of the United States—generally applicable to crimes committed in 'Indian country.'"  *Bruce*, 394 F.3d at 1218 (citing 18 U.S.C. § 1152).  Section 1152 provides that "[e]xcept as otherwise expressly provided by law, the general laws of the United States as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States . . . shall extend to the Indian country." 18 U.S.C. § 1152.  Put another way,

so-called "federal enclave laws"—which apply in enclaves, such as national parks, military bases, and federal buildings—apply in Indian Country. *Begay*, 42 F.3d at 498. Section 1152 contains three exceptions: "offenses committed by one Indian against the person or property of another Indian," offenses committed by an Indian who has been punished by the tribe, and cases secured by treaty to the exclusive jurisdiction of a tribe. 18 U.S.C. § 1152; *see also United States v. Antelope*, 430 U.S. 641, 643 n.2 (1977) (noting the fourth judicially-created exception: "a non-Indian charged with committing crimes against non-Indians in Indian country is subject to prosecution under state law").

The Indian Major Crimes Act, 18 U.S.C. § 1153, partially abrogated section 1152 by extending federal jurisdiction over Indians in Indian country for the commission of "major" crimes, enumerated in the statute. *Begay*, 42 F.3d at 498. Section 1153 provides that

> [a]ny Indian who commits against the person or property of another Indian or other person any of the following offenses, namely murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, a felony assault under section 113, an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

18 U.S.C. § 1153(a).  "Enacted in 1885, [section 1153] guaranteed that Indians committing major crimes against other Indians would be treated with the same rigor as non-Indian offenders." *Bruce*, 394 F.3d at 1220.

Importantly, the Ninth Circuit has repeatedly emphasized that the Indian Major Crimes Act "deals only with the application of federal enclave law to Indians and has no bearing on federal laws of nationwide applicability that make actions criminal wherever committed."  *Begay*, 42 F.3d at 498.  That is, "federal criminal laws of general, nationwide applicability . . . apply to Indians unless a treaty specifically exempts them." *Bruce*, 394 F.3d at 1220; *see Begay*, 42 F.3d at 498 (explicitly rejecting the Second Circuit decision, *United States v. Markiewicz*, 978 F.2d 786 (2d. Cir. 1992), which held that only those federal criminal statutes of nationwide applicability that constitute "peculiarly Federal" crimes apply to Indians in Indian country).  In so holding, the Circuit has repeatedly rejected the contention that Indians may not be federally charged for *any* criminal conduct beyond those crimes enumerated in section 1153.  *See, e.g.*, *Begay*, 42 F.3d at 498.  "[T]he Major Crimes Act, deals only with the application of federal enclave law to Indians . . . . Similarly, § 1152 relates 'only to federal enclave law—law in which the situs of the offense is an element of the crime." *Id.*  Accordingly, "federal criminal laws of nationwide applicability apply to Indians within Indian country

just as they apply elsewhere." *United States v. Anderson*, 391 F.3d 1083, 1085-86 (9th Cir. 2004).

This Court finds it has jurisdiction over this case. First, the Ninth Circuit has expressly found that the charge under Count 2 of the Indictment—conspiracy in violation of 18 U.S.C. § 371—is a federal statute of nationwide applicability that applies equally to everyone, including Indians in Indian country. *See Begay*, 42 F.3d at 500. Second, at least one other Circuit has noted that the charge under Count 1—conducting an illegal gambling business in violation of 18 U.S.C. § 1955—is a nationally applicable federal criminal statute for purposes of federal jurisdiction. *See United States v. Gachot*, 512 F.3d 1252, 1254-54 (10th Cir. 2008). Because this charge is not affected by the federal enclave law nor have Indians been expressly or impliedly excluded from its reach, *see Begay*, 42 F.3d at 499, this Court agrees. Finally, because the remaining Counts within the Indictment charging Defendant with violation of 7 U.S.C. § 2156(a)(1)—unlawful animal fighting venture—similarly do not include situs as an element of the offense or exclude Indians from their application, they apply to Defendant as a law of nationwide applicability. *See Begay*, 42 F.3d at 499. Thus, this Court has jurisdiction over Defendant Olney's case.

///

///

1    **B.  The Wheeler-Howard Act**

2        Second, Defendant Olney asserts that the Yakama Tribal Court has rightful

3    jurisdiction over this case pursuant to the Wheeler-Howard Act, or the Indian

4    Reorganization Act of 1934.  ECF No. 877 at 7.  In support, Defendant cites to

5    section 16 of the Act, which enumerates specific powers of Indian tribes—"[i]n

6    addition to all powers vested in any Indian tribe or tribal council by existing

7    law"—including the powers "[t]o employ legal counsel, the choice of counsel and

8    fixing of fees to be subject to the approval of the Secretary of the Interior; to

9    prevent the sale, disposition, lease or encumbrance of tribal lands, interests in

10   lands, or other tribal assets without the consent of the tribe; and to negotiate with

11   the Federal, State, and local Governments."  The Wheeler-Howard Act, Pub. L.

12   No. 383, § 16, 48 Stat. 984 (1934).

13       Defendant's motion lists additional powers of tribes, including the power

14   "[t]o administer justice with respect to all disputes and offenses of or among the

15   members of the tribe, other than the ten major crimes reserved to the Federal

16   courts." ECF No. 877 at 8.  Although appearing to cite to the Wheeler-Howard

17   Act, this language is derived from the conclusion of a 1934 Opinion of the

18   Solicitor for the Department of the Interior on Powers of Indian Tribes. 55 Interior

19   Dec. 14, 66 (Dep't of Interior 1934).  However, within the body of the Opinion, the

20   Solicitor acknowledges that offenses punishable in the Federal Courts when

committed within an Indian Reservation include "the ordinary Federal crimes applicable throughout the United States." *Id.* at 61. Thus, although a tribal court may have concurrent jurisdiction over intra-Indian Crimes, *see Bruce*, 394 F.3d at 1218-21 (summarizing the "complex patchwork" of rules concerning criminal jurisdiction in Indian country), the federal government retains jurisdiction over violations of "federal laws of nationwide applicability that make actions criminal wherever committed." *See Begay*, 42 F.3d at 498. At any rate, to the extent the Solicitor's Opinion contradicts precedent discussing the exercise of criminal jurisdiction over Indians in Indian country, this Court is bound by the opinions of the Ninth Circuit that are detailed above.

### C. Indian Gaming Regulatory Act

Third, Defendant Olney asserts that the Indian Gaming Regulatory Act ("IGRA") protects him from federal prosecution. ECF No. 877 at 17-18.

The IGRA provides that, with the exception of Class III gaming conducted under an approved Tribal-State compact, "for purposes of Federal law, all State laws pertaining to the licensing, regulation, or prohibition of gambling, including but not limited to criminal sanctions applicable thereto, shall apply in Indian country in the same manner and to the same extent as such laws apply elsewhere in the State." 18 U.S.C. § 1166(a); *United States v. E.C. Invs., Inc.*, 77 F.3d 327, 330 (9th Cir. 1996). "The phrase 'for purposes of Federal law' indicates that section

1166 applies to all relevant federal law, which includes section 1955." *E.C. Invs., Inc.*, 77 F.3d at 330.

Here, a federal grand jury returned an indictment charging Defendant with conducting an "illegal gambling business" in violation of 18 U.S.C. § 1955. As the necessary predicate state law offense, Defendant was charged with willfully and knowingly conducting, financing, managing, supervising, directing, and owing all or part of an illegal gambling business involving betting on cockfighting in violation of sections 9.46.220, 16.52.117 of the Revised Code of Washington. Defendant has presented no argument, nor is there one, that RCW sections 9.46.220 and 16.52.117 do not provide valid predicate state offenses for purposes of the IGRA, nor that Defendant's conduct was sanctioned by a Tribal-State compact. Moreover, as the Ninth Circuit has expressly held, the IGRA does not prevent the federal government from prosecuting violations of section 1955 on Indian country. *E.C. Invs., Inc.*, 77 F.3d at 331. And, finally, despite Defendant's oft-repeated contention, the fact that conducting an illegal gambling business is not an enumerated "major crime" under the Indian Major Crimes Act does not protect Defendant Olney, a member of the Yakama Nation, from federal prosecution.

**D. Retrocession**

Finally, Defendant Olney asserts that, in light of the policy of retrocession, this Court should defer to the Yakama Tribal Court. ECF No. 877 at 16-17.

ORDER RE: PRETRIAL MOTIONS ~ 10

1        In 1953, Congress enacted Public Law 280, 67 Stat. 588, which required

2  some states and authorized others to assume jurisdiction over Indians within a

3  state's borders. *See State v. Shale*, 182 Wash.2d 882, 887 (2015) (en banc). In

4  1963, Washington asserted civil and criminal jurisdiction over all Indian country

5  with certain exceptions but, shortly thereafter, attempted to return jurisdiction from

6  the state to the federal government, which retrocession the federal government

7  partially accepted. *Id.* at 888. In 1968, Congress passed legislation formally

8  allowing states to retrocede previously claimed jurisdiction over tribes to the

9  federal government:

> The United States is authorized to accept a retrocession by any State
> of all or any measure of the criminal or civil jurisdiction, or both,
> acquired by such State pursuant to the provisions of section 1162 of
> Title 18, section 1360 of Title 28, or section 7 of the Act of August
> 15, 1953 (67 Stat. 588), as it was in effect prior to its repeal by
> subsection (b) of this section.

14  25 U.S.C. § 1323(a). Today, Washington has formalized the process for full or

15  partial retrocession of state jurisdiction over members of a tribe back to the federal

16  government. *Id.* at 888-89 (citing RCW 37.12.160-.180).

17        It is unclear how the process of retrocession—the transfer of certain

18  jurisdiction from the state back to the federal government—supports Defendant's

19  motion. To the extent Defendant is asking this Court to decline jurisdiction and

20  "retrocede" jurisdiction back to the Yakama Tribal Court, this Court declines such

ORDER RE: PRETRIAL MOTIONS ~ 11

an invitation. And, once again, this Court rejects Defendant's contention that the federal government may only prosecute "major crimes"; as detailed above, federal jurisdiction over this matter is proper.  Accordingly, for the reasons stated above, Defendant's motion is denied.

**IT IS HEREBY ORDERED:**

1.  Defendant's Motion to Dismiss Case (ECF No. 877) is **DENIED**.

2.  Defendant's Motion to Continue (ECF No. 886) is **GRANTED.**  The Court finds that Defendant requires additional time to investigate and prepare for trial, taking into account the exercise of due diligence, and that his interests would not be adequately represented without a continuance.

3.  A final pretrial conference/motions hearing is set for **January 12, 2016, at 1:00 p.m.**, in Yakima. Upon request, the Court may consider telephonic appearance by the Defendant and his counsel.  All pre-trial motions, including motions *in limine* and *Daubert* motions as well as a motion to dismiss if appropriate, shall be filed and served on or before **December 22, 2015**, and noted for hearing at the pre-trial conference.  Responses to pretrial motions shall be filed and served on or before **December 29, 2015.**  Replies, if any, shall be filed and served on or before **January 5, 2016.**  If the Court determines an evidentiary hearing is appropriate, the Court will notify the parties of the date and time for such hearing.

4.  The jury trial set for September 21, 2015, is vacated and continued to **January 25, 2016, at 8:30 a.m.**, in Yakima, Washington. Counsel shall appear in court at 8:30 a.m. on the first day of trial to address any pending pretrial motions. Jury selection will begin at 9:00 a.m.  Trial briefs, proposed voir dire, jury instructions, verdict forms, <u>exhibit lists, and expert witness lists</u> shall be filed and served by all parties on or before **seven (7) calendar days** prior to trial.

5.  Pursuant to 18 U.S.C. § 3161(h)(7)(A), the time between September 5, 2015, until January 25, 2016, is DECLARED EXCLUDABLE for purposes of computing time under the Speedy Trial Act.  The Court finds that the ends of justice served by such a continuance outweigh the interests of the public and Defendant in a speedy trial.

6.  Counsel for the defense shall notify the Defendant and ensure his attendance at every scheduled hearing and trial.

The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** September 8, 2015.



THOMAS O. RICE
United States District Judge

ORDER RE: PRETRIAL MOTIONS ~ 13